IN THE CIRCUIT COURT IN THE
12th JUDICIAL CIRCUIT IN AND FOR
DESOTO COUNTY, FLORIDA

HOWARD EASTER,

    Plaintiff,

vs.

WELLPATH RECOVERY SOLUTIONS, LLC,

    Defendant,

                                              /

## COMPLAINT FOR DAMAGES

Plaintiff, HOWARD EASTER (hereinafter referred to as "EASTER"), sues the Defendant, WELLPATH RECOVERY SOLUTIONS, LLC, a Florida Limited Liability Company (hereinafter referred to as "WELLPATH") and states as follows:

1. This is an action for damages in excess of $50,000 for violations of the Florida Civil Rights Act and under the Americans With Disabilities Act Amendments Act of 2008.

## GENERAL ALLEGATIONS

2. The Plaintiff, EASTER, is an individual over eighteen (18) years of age, residing in Sebring, Highlands County, Florida.

3. The Defendant, WELLPATH, is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Nashville, Tennessee. However, it operates correction facilities throughout the State of Florida.

4. Defendant operates the Florida Civil Commitment Center facility in Arcadia, FL.

5. At all times material hereto, EASTER was employed by WELLPATH as a Maintenance Technician at the Florida Civil Commitment Center.

6. Venue is proper with this Court as the acts and occurrences happened in DeSoto

County, Florida.

7. On or about April 28, 2020, EASTER suffered an on-the-job injury in which he fractured his pelvis, fractured seven ribs, and punctured his lung.

8. In or about July 2020, EASTER was allowed to return to work and was placed on light duty with restrictions of no lifting more than 10 pounds, among other limitations. He continued to work on light duty until December 9, 2020.

9. EASTER underwent a total hip replacement surgery on or about December 11, 2020, and was placed on leave.

10. As a result of the workplace accident and subsequent hip replacement surgery, EASTER suffered from a disability that substantially limited his daily life activities, to wit, he suffered from physical impairments that prevented him from lifting more than 20 pounds or carrying items that weighed more than 10 pounds.

11. On or about March 2, 2021, EASTER had a follow-up appointment with his doctor and was given a note releasing him back to work on light duty.

12. EASTER went to work with the light duty slip and gave it to the human resources department. EASTER's medical documentation specified that he could not lift more than 20 pounds and should not carry more than 10 pounds.

13. At all times material hereto, EASTER'S request for light duty (something he was previously granted for several months) was a request for a reasonable accommodation.

14. Upon receiving the medical documentation specifying that EASTER needed light duty, WELLPATH initially failed to engage in any interactive discussion with him to determine what accommodations could be granted and merely ignored his request.

15. On or about March 19, 2021, WELLPATH's human resources department finally

called EASTER to discuss his request for light duty.

16. On or about March 19, 2021, EASTER went to the Civil Commitment Correctional Facility, where he worked to meet with the human resources department to discuss the options for working light duty. At that time, EASTER was told that he would not be reinstated to the job with the light-duty accommodations.

17. Instead, EASTER was told that one option available was to be placed in a position that paid substantially less money.

18. EASTER inquired whether any other position was available, as he had previously worked as a correctional officer. Based on his experience, there was other work that he could have done that would not have resulted in a significant reduction in pay.

19. EASTER also mentioned that he had been given a $1.50 raise before his workplace accident. EASTER suggested that since he still had limitations from his accident, perhaps WELLPATH could simply reduce his pay by $1.50 instead of offering a job that paid nearly $4.00 less per hour.

20. WELLPATH's human resources department agreed to look into Easter's request and advised that they would get back to him with his options; however, they never did.

21. In the interim, EASTER was advised that before he could be reinstated for any employment, EASTER would have to provide the company with medical documentation releasing him back to work on light duty, even though it had already been supplied with that documentation. WELLPATH provided EASTER with the forms it wanted his doctor to complete.

22. EASTER provided the forms to his medical doctor to be completed. However, EASTER's doctor's office would not use WELLPATH'S specific forms and insisted that any documents authorizing the return to work had to be prepared on those approved by worker's

compensation.

23. Between March 2021 and May 6, 2021, EASTER had to go back and forth between the human resources department and his doctors trying to get various company-approved forms submitted, releasing him back to work first on a light duty basis and then with a full release removing any restrictions.

24. Each time EASTER submitted documentation to WELLPATH, they would reject the form for not being on WELLPATH's internal forms.

25. On May 4, 2021, WELLPATH even issued a disciplinary action form to EASTER for not submitting the medical form it requested as opposed to the worker's compensation medical status form.

26. Finally, EASTER was terminated on May 6, 2021, for allegedly failing to return from leave.

27. However, EASTER repeatedly tried to return to work for approximately a month and a half before he was terminated. Still, WELLPATH refused to provide him with a reasonable accommodation for his disability.

28. During his efforts to return to work, WELLPATH knew that EASTER had restrictions imposed due to his medical condition (such as not being able to lift more than 15 pounds).

29. On or about March 1, 2022, EASTER timely filed a Charge of Discrimination with the EEOC, which was requested to be dual filed with the Florida Commission on Human Relations.

30. During the investigation conducted by the EEOC, WELLPATH falsely represented to the EEOC that EASTER refused to accept an accommodation of a lesser-paying position. Instead, WELLPATH refused to accept EASTER's medical documentation that should have

allowed him to return to work.

31. Again, the disciplinary action and termination notice stated that EASTER did not return paperwork and did not return from leave.

32. The letter of termination issued by WELLPATH to EASTER did not mention any alleged refusal by EASTER to accept a reasonable accommodation, to wit, a different job.

33. Ironically, the termination letter also did not refer to an alleged failure to provide documentation, which he had been written up for two days prior.

34. At all times material hereto, WELLPATH simply refused to provide a reasonable accommodation to allow EASTER to return to work.

35. WELLPATH's refusal to provide a reasonable accommodation violates the Americans With Disabilities Act Amendments Act and the Florida Civil Rights Act.

36. On June 12, 2023, the EEOC issued its Notice of Right to Sue.

37. The Florida Commission on Human Relations did not provide any notice to EASTER regarding his rights under Chapter 760, Florida Statutes, the Florida Civil Rights Act.

38. All conditions precedent to this action have been met or waived.

## COUNT I – DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

39. The Plaintiff readopts and restates the allegations contained in paragraphs one (1) through thirty-eight (38) as if more fully set forth herein.

40. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

41. WELLPATH is a covered employer to which the ADA applies.

42. At all times material hereto, EASTER suffered from a medical condition/disability (fractured pelvis, fractured ribs, and punctured lung) that resulted in a long-term disability that impacted his daily life activities (to wit limited/restricted his ability to lift anything over 20 pounds or carry items weighing more than 10 pounds).

43. Because his physical limitations substantially limited at least one of Plaintiff's major life activities, EASTER is an individual with a disability under the ADA.

44. Despite his restrictions, EASTER could perform his job's essential functions and perform his job duties from July 2020 through December 2020 with more stringent restrictions in place.

45. However, WELLPATH refused to provide EASTER with a reasonable accommodation and refused to reinstate him for reasons that amount to form over substance. Specifically, WELLPATH refused to accept EASTER's return to work paperwork that his doctor completed and submitted on forms his doctor utilized instead of using WELLPATH's internal forms.

46. EASTER's disabilities were the reason and/or the motivating factors to terminate his employment.

47. WELLPATH's stated reasons for terminating EASTER were pretextual.

48. WELLPATH terminated and disqualified EASTER from employment solely because Plaintiff suffered from a disability.

49. WELLPATH'S termination and disqualification of EASTER based on his disability violated the ADA.

50. As a result of WELLPATH's actions, EASTER has suffered and will continue to

suffer economic and non-economic harm.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, HOWARD EASTER, respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant WELLPATH discriminated against EASTER based on health conditions and physical limitations;

b. Appropriate injunctive relief, including but not limited to reinstatement of EASTER's position with WELLPATH and an order restraining WELLPATH from engaging in further discriminatory conduct of the types alleged in this Complaint;

c. Back pay in an amount to be determined at trial;

d. In the event reinstatement is not granted, front pay;

e. Compensatory and consequential damages, including for emotional distress against defendant WELLPATH;

f. Punitive damages against defendant WELLPATH;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Attorneys' fees and costs of this action; and

i. Any such further relief as the Court deems appropriate.

**COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, CHAPTER 760**

51. The Plaintiff readopts and restates the allegations contained in paragraphs one (1) through thirty-eight (38) as if more fully set forth herein.

52. "The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in

personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state." Fla. Stat. § 760.01

53. WELLPATH is a covered employer to which Chapter 760 of the Florida Civil Rights Act applies.

54. At all times material hereto, EASTER suffered from a medical condition/disability (fractured pelvis, fractured ribs, and punctured lung) that resulted in a long-term disability that impacted his daily life activities (to wit limited/restricted his ability to lift anything over 20 pounds or carry items weighing more than 10 pounds).

55. Because his physical limitations substantially limited at least one of Plaintiff's major life activities, EASTER is an individual with a disability under the Florida Civil Rights Act.

56. Despite his restrictions, EASTER could perform his job's essential functions and perform his job duties from July 2020 through December 2020 with more stringent restrictions in place.

57. However, WELLPATH refused to provide EASTER with a reasonable accommodation and refused to reinstate him for reasons that amount to form over substance. Specifically, WELLPATH refused to accept EASTER's return to work paperwork that his doctor completed and submitted on forms his doctor utilized instead of using WELLPATH's internal forms.

58. EASTER's disabilities were the reason and/or the motivating factors to terminate his employment.

59. WELLPATH's stated reasons for terminating EASTER were pretextual.

60. WELLPATH terminated and disqualified EASTER from employment solely

8

because Plaintiff suffered from a disability.

61. WELLPATH'S termination and disqualification of EASTER based on his disability violated the Florida Civil Rights Act.

62. As a result of WELLPATH's actions, EASTER has suffered and will continue to suffer economic and non-economic harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, HOWARD EASTER, respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant WELLPATH discriminated against EASTER based on health conditions and difficulties breathing;

b. Appropriate injunctive relief, including but not limited to reinstatement of EASTER's position with WELLPATH and an order restraining WELLPATH from engaging in further discriminatory conduct of the types alleged in this Complaint;

c. Back pay in an amount to be determined at trial;

d. In the event reinstatement is not granted, front pay;

e. Compensatory and consequential damages, including for emotional distress against defendant WELLPATH;

f. Punitive damages against defendant WELLPATH;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Attorneys' fees and costs of this action; and

i. Any such further relief as the Court deems appropriate.

## TRIAL BY JURY DEMANDED.

Respectfully submitted on this 10th day of September, 2023.

/s/ Barbra A. Stern
Barbra A. Stern, Esquire
Fla. Bar No. 526576
Law Offices of Barbra Stern, PA
808 E. Las Olas Blvd. Suite 102
Fort Lauderdale, FL 33301
Phone: (954) 743-4710
Direct Dial (954) 239-7249
barbra@sternlawoffice.com
**ATTORNEY(S) FOR PLAINTIFF**